UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PAUL E. ALLEN and KELLI D. ALLEN,            Case no. 19-11843-ta7

    Debtors.

PAUL E. ALLEN and KELLI D. ALLEN,

    Plaintiffs,

v.            Adv. no. 19-1065-t

CAPITAL ONE BANK,

    Defendant.

## **OPINION**

    Shortly after filing bankruptcy, Debtors sued Capital One Bank, seeking the return of Mr. Allen's garnished wages under an avoidable preference theory. The wages were returned to Mr. Allen two weeks later. Debtors then amended their complaint, not only reasserting the preference claim, which by then was moot, but also alleging that Capital One had willfully violated the automatic stay by dragging its feet on releasing the garnishment. Before the Court is Capital One's motion for summary judgment, based on evidence that it proceeded diligently. Capital One's evidence of diligence is substantial. Debtors have no contrary evidence. The Court therefore will enter judgment in Capital One's favor on all claims.

    I.      FACTS

    The following facts are not in genuine dispute:

    On February 6, 2019, Capital One obtained a state court default judgment against Mr. Allen

for $6,442.38.[1] Capital One then applied for a writ of garnishment to be served on Federal Express Corporation, where Mr. Allen worked. The state court issued the writ on March 25, 2019.

Capital One hired a process server to serve the application, writ, and other required papers on Corporation Process Company, FedEx's registered agent for service of process in New Mexico, at 726 E. Michigan Dr., Ste. 330, Hobbs, NM 88240. FedEx was duly served, answered the writ of garnishment on May 14, 2019, and began garnishing Mr. Allen's wages. A judgment on the writ of garnishment and order to pay was entered in the State Court Action on June 3, 2019.

The garnished wages are summarized in the following table:

| Week worked | Payment date | Amount garnished |
|---|---|---|
| 5/5/19-5/11/19 | 5/17/2019 | $315.92 |
| 5/12/19-5/18/19 | 5/24/2019 | $333.08 |
| 5/19/19-5/25/19 | 5/31/2019 | $328.13 |
| 5/25/19-6/1/19 | 6/7/2019 | $151.17 |
| 6/2/19-6/8/19 | 6/14/2019 | $218.04 |
| 6/9/19-6/15/19 | 6/21/2019 | $206.32 |
| 6/16/19-6/22/19 | 6/28/2019 | $222.99 |
| 6/23/19-6/29/19 | 7/5/2019 | $302.38 |
| 6/30/19-7/6/19 | 7/12/2019 | $142.78 |
| 7/7/19-7/13/19 | 7/19/2019 | $170.06 |
| 7/14/19-7/20/19 | 7/26/2019 | $109.47 |
| 7/20/19-7/26/10 | 8/2/2019 | $129.74 |
| 7/28/19-8/3/19 | 8/9/2019 | $144.96 |
| 8/4/19-8/10/19 | 8/16/2019 | $132.35 |
|  | total | $2,907.39[2] |

On the afternoon of August 8, 2019, Paul and Kelli Allen filed this chapter 7 case. Within 40 minutes of filing, The Allens' bankruptcy counsel sent an email to Capital One's state court attorneys, notifying them of the bankruptcy. Capital One's lawyers acknowledged receipt of the

---

[1] The action was styled *Capital One Bank (USA), N.A. v. Allen*, Case No. T-4-CV-2018017255, filed in the Bernalillo County Metropolitan Court, State of New Mexico (the "State Court Action").
[2] For reasons that have not been made clear to the Court, FedEx never paid any of the garnished funds over to Capital One.

email later that afternoon.

The next day Capital One drafted a release of garnishment and mailed it to the state court for filing, with copies to FedEx (at the Hobbs address) and the Allens. These actions did not prevent the garnishment of Mr. Allen's wages paid on August 9, 2019, for work done the previous week.[3]

On August 14, 2019, Capital One called FedEx and learned that the garnishment had not yet been stopped. FedEx gave Capital One a fax number and Capital One faxed the release to FedEx.[4]

Two days later Capital One called FedEx again and learned that FedEx still had not released the garnishment. This time FedEx gave Capital One an email address, to which Capital One emailed the release.[5] Nevertheless, Mr. Allen's wages were garnished on August 16, 2019.

The Allens brought this adversary proceeding on August 16, 2020, seeking to recover $2,907.39 in garnished wages from Capital One as a preferential transfer.

The Allens' bankruptcy counsel sent Capital One at least three emails and three letters between August 8–16, 2019. The correspondence was aggressive. For example, the letter counsel sent to Capital One on August 16, 2019, the day she filed this proceeding, asked for $5,000 to

---

[3] Mr. Allen was paid every Friday for work done the week before. The Court has no evidence when FedEx's payroll is processed, but it seems very unlikely that the August 9 garnishment could have been stopped.

[4] The Allens' bankruptcy counsel filed a notice of bankruptcy in the State Court Action on August 14, 2019. It does not appear that she served the notice on FedEx.

[5] The Allens consider it a "Material Fact in Dispute" that they never received recordings or call logs of Capital One's phone calls to FedEx. The Court does not. The fact that calls were made is attested to by affidavit and is not refuted. The content of the phone calls is immaterial to the Court's decision because the results of the phone calls were the follow up fax and email to FedEx. The email referred to the conversation between Capital One and FedEx that occurred earlier that day. With respect to the discovery dispute, see the Court's discussion of the Allens' Rule 56(d) request, *infra*.

settle the dispute. The bankruptcy case had only been pending a week!

On August 22, 2019, the state court entered Capital One's release of garnishment on the docket, signed "Granted" by the judge.

Mr. Allen's wages paid on August 23, 2019, were not garnished. Thus, it took about two weeks for FedEx to stop garnishing Mr. Allen's wages. Furthermore, when FedEx paid Mr. Allen on August 30, 2019, the payment included all of the $2,907.39 that had been garnished. Of that amount, all but $37.81 was from pre-petition wages.

On September 15, 2019, the Allens filed an amended complaint, adding a claim for intentional violation of the automatic stay and asking for compensatory and punitive damages and attorney fees. They did not delete the claim to recover the garnished wages, which had been returned two weeks before.

The Allens amended their bankruptcy schedules on September 23, 2019. In their amended schedules they claimed an exemption for the garnished wages under N.M.S.A. § 35-12-7.[6]

## II. DISCUSSION

A. <u>Summary Judgment Standards</u>.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Bird v. West Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Anderson*).

---

[6] The exemption has been challenged by the trustee, has been fully briefed and litigated, and is under advisement.

The Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc*, 369 U.S. 654, 655 (1962)). The Allens did not dispute most of Capital One's "Statement of Material Undisputed Facts" and presented few countervailing facts. To the extent The Allens do not dispute them, Capital One's facts are accepted as true for the purpose of ruling on the motion.

B.  Rule 56(d).

In their response to the summary judgment motion the Allens ask the Court to deny or defer ruling on the motion until it has addressed all discovery disputes. Fed. R. Civ. P. 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>   (1) defer considering the motion or deny it;
>   (2) allow time to obtain affidavits or declarations or to take discovery; or
>   (3) issue any other appropriate order.

To comply with Rule 56(d),

> [A] party must (i) file an affidavit, *see Pasternak v. Lear Petroleum Exploration Inc.*, 790 F.2d [828, 832–33 (10th Cir. 1986)]; (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts, *see Comm. for the First Amendment v. Campbell*, 962 F.2d [1517, 1522 (10th Cir. 1992)]; (iii) explain why facts precluding summary judgment cannot be presented, *see Comm. for the First Amendment v. Campbell*, 962 F.2d at 1522; and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment, *see Comm. for the First Amendment v. Campbell*, 962 F.2d at 1522.

*Todd v. Montoya*, 877 F. Supp. 2d. 1048, 1083 (D.N.M. 2012); *see also Sholl v. Plattform Advertising, Inc.*, 438 F. Supp. 2d 1303, 1310 (D. Kan. 2006) (citing *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993)) (if the nonmovant does not "state with specificity how the additional time would enable her to obtain evidence to oppose the motion for summary judgment," a continuance to conduct additional discovery is not warranted); Federal

Practice and Procedure (Wright & Miller) § 2740 n.2 and associated text ("a party who seeks the protection of subdivision (d) must state by affidavit or declaration the reasons why it is unable to present the necessary opposing material").

The Allens did not file an affidavit. They do not say if they need more discovery to respond to the motion or, if so, what discovery they need. Rather, in their response the Allens state generally that more discovery is needed to support their claims against Capital One. This general statement is insufficient under Rule 56(d).

Furthermore, the parties attached numerous exhibits to their motion, response, and reply. The issue is whether Capital One acted diligently to release the garnishment; that issue is well developed from the current record. No additional discovery could alter the fact that Capital One mailed its release of garnishment to FedEx one day after the bankruptcy was filed, nor that Capital One took a number of additional steps to obtain the release, nor that FedEx released the garnishment two weeks after the case was filed. *See* Federal Practice and Procedure (Wright & Miller) § 2741 n.16 (collecting cases holding that courts did not abuse their discretion in refusing to allow additional discovery where, inter alia, it would only bolster an existing record and would not affect the outcome of the motion). The Allens' Rule 56(d) request will be denied.

C.  Standing.

1.  Section 547 Claim.[7] The Court need not rule on the Allens' standing to pursue the § 547 avoidable preference claim, as the garnished wages have been returned. The Court wonders why the Allens included the claim in their amended complaint. The § 547 claim will be dismissed.

2.  Section 362(k) Claim–Prepetition Wages. The Allens lack standing to assert that Capital One violated the automatic stay in connection with the garnishment of Mr. Allen's

---

[7] All statutory references are to 11 U.S.C. unless otherwise indicated.

prepetition wages. In *In re Marquez*, 2013 WL 74606 (Bankr. D.N.M.), Chief Judge Robert Jacobvitz of this Court addressed a very similar issue (with the same debtors' counsel). In *Marquez* two creditors obtained wage garnishment orders against the debtor and her employer, Verizon Wireless. Wages were garnished and held by ADP, a third-party payroll processing company. Post-petition, the debtor claimed the garnished wages as exempt and sued the creditors, Verizon, and ADP for turnover of the wages. The Court entered default judgments on the turnover portion of debtor's complaint.

The debtor also sued the defendants for damages under § 362(k), alleging willful violation of the automatic stay. Verizon and ADP moved to dismiss the § 362(k) claim on a variety of grounds. The court dismissed the claim for lack of standing:

> In *In re Bucchino,* 439 B.R. 761 (Bankr. D.N.M. 2010), *aff'd,* No. 35 2:10–cv–01177 (D.N.M. Sept. 14, 2011) this Court held that the debtors lacked standing to assert a claim for willful violation of the automatic stay against a bank that froze the debtors' bank account upon the filing of the debtors' Chapter 7 case. The Court reasoned that the debtors could not demonstrate an invasion of a legally protected interest because the only interest the debtors had in the bank account was their claim of exemption….[Debtor's] claim of exemption is insufficient to confer standing to assert a violation of the automatic stay, at least absent a claim that the Defendants put at risk the availability of the Garnished Funds if and when the claim of exemption was allowed.

*Marquez*, 2013 WL 74606, at *3. Here, the Allens do not allege that Capital One has put at risk the availability of the garnished funds, nor could they, given that the funds were returned before the amended complaint was filed. Thus, following *Marquez*, the Court holds that the Allens lack standing to pursue their § 362(k) claim with respect to Mr. Allen's prepetition wages.

Even if the Allens' exemption ultimately is allowed, they would not have standing to pursue a § 362(k) claim on the prepetition garnished wages. As the only alleged stay violation occurred while the wages were property of the estate, any § 362(k) claim would be estate property, owned by the trustee. *See Bucchino*, 439 B.R. at 770 (a claim of exemption does not remove

-7-
Case 19-01065-t    Doc 58    Filed 07/10/20    Entered 07/10/20 14:42:08 Page 7 of 11

property from the estate until the exemption is allowed).

        3.      <u>Section 362(k)–Postpetition Wages</u>. In a chapter 7 case, post-petition wages belong to the debtor rather than the estate. § 541(a)(6); *In re Calder*, 94 B.R. 200, 202 (Bankr. D. Utah. 1988), aff'd, 912 F.2d 454 (10th Cir. 1990). Giving the Allens the benefit of the doubt,[8] the Court concludes that they have standing to assert a claim for willful violation of § 362(a)(6) with respect to Mr. Allen's $37.81 of garnished postpetition wages.

D.      <u>Garnishments and the Automatic Stay</u>.

11 U.S.C. § 362(a) provides in part:

(a) [A] petition filed under section 301, 302, or 303 of this title...operates as a stay, applicable to all entities, of–
      (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

"The automatic stay goes into effect upon the filing of a bankruptcy petition, prohibiting certain actions against the debtor or property of the bankruptcy estate." *In re Buchanan*, 273 B.R. 749, 751 (Bankr. M.D. Ga. 2002). It exists to give debtors "breathing room" from their creditors while they attempt reorganization or an orderly liquidation. *See In re Patterson*, 967 F.2d 505, 512 n.9 (11th Cir. 1992).

"Congress intended the stay of section 362(a)(6) to apply to the automatic (as well as coerced) transfer and application of post-petition funds to the prepetition debts of Chapter 7 debtors." *Matter of Hellums*, 772 F.2d 379, 381 (7th Cir. 1985). "The act of garnishment falls within the prohibitions of § 362(a)….Thus, the continuation of the garnishment is a violation of the automatic stay." *In re Roche*, 361 B.R. 615, 621 (Bankr. N.D. Ga 2005); *see also In re See*, 301 B.R. 549, 552–53 (Bankr. N.D. Iowa 2003) (same); *In re Moran*, 112 B.R. 197, 199–200

---

[8] The Allens do not specify which section of § 362 they rely upon.

(Bankr. S.D. Tex. 1989) (same).

"[A] garnishing creditor has an affirmative duty to release the garnishment of a debtor's wages as soon as it learns of the pending bankruptcy." *Lawrence Athletic Club v. Scroggin (In re Scroggin)*, 364 B.R. 772, 779 (10th Cir. BAP 2007) (quoting *In re Pulliam,* 262 B.R. 539, 542 (Bankr. D. Kan. 2001); *see also Buchanan*, 273 B.R. at 751 (same); *Roche,* 361 B.R. at 621 ("The automatic stay requires the creditor to cease any steps to begin or maintain any action against the property of the estate."). Creditors also have a duty to return wages garnished postpetition. *In re Matamoros*, 605 B.R. 600, 615 (Bankr. S.D.N.Y. 2019); *In re Sucre*, 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998).

Creditors must act within a reasonable time to stop a pending garnishment. *In re Fernandez*, 132 B.R. 775, 778 (M.D. Fla. 1991). "The 'reasonable time period' is unique to each case and must be determined on a case by case basis." *Id.* (citing *In re Carlsen*, 63 B.R. 706, 710 (Bankr. C.D. Cal. 1986)).

Section 362(k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A creditor willfully violates the automatic stay when "the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent [to violate the stay] is required." *In re Johnson*, 501 F.3d 1163, 1172 (10th Cir. 2007). In contrast, a creditor that acts contrary to the automatic stay without knowledge of the bankruptcy commits a technical violation, which "can become willful when a creditor refuses to remedy the violation after receiving notice of the stay." *In re Kline*, 472 B.R. 98, 102 (10th Cir. BAP 2012).

E.  <u>Capital One did not Violate the Automatic Stay</u>.

The Allens allege that Capital One willfully violated the automatic stay by moving too slowly to release the garnishment. Capital One asks for a summary judgment that it acted promptly.

There is substantial evidence that Capital One moved with alacrity to release the garnishment. Its efforts began the day after it was notified of the bankruptcy. Capital One continued to work on releasing the garnishment for the next two weeks, until FedEx finally stopped garnishing Mr. Allen's wages. During those two weeks Capital One drafted the release, filed it, and mailed, faxed, and emailed it to FedEx. Capital One also called FedEx at least twice. Finally, Capital One corresponded with the Allens' counsel. For a large corporation, Capital One's efforts were more than adequately swift to avoid running afoul of the automatic stay. Any delay was caused by FedEx, not Capital One.[9]

Debtors complain that Capital One should not have mailed the release of garnishment to FedEx at its Hobbs, New Mexico address. The complaint is not well founded. The Hobbs address was not random; it is the address of FedEx's registered agent in New Mexico, the same one used to serve the writ of garnishment. Capital One's use of this address, particularly viewed in conjunction with its other actions, showed an effort to release the garnishment, not prolong it. Using a different address could have caused more delay.

Return of the $37.81 in postpetition wages was equally prompt. The postpetition wages were garnished on August 16, 2019, and returned August 30, 2019. Because Capital One never received the garnished wages, all it could do was release its claim to them, which it did. FedEx returned all of the garnished wages, including the small postpetition portion.

Given the facts of this case, one day is more than reasonable for mailing the release of

---

[9] Like Capital One, FedEx is a very large corporation. It cannot be expected to react as quickly as a local mom and pop business.

garnishment to FedEx and two weeks is a reasonable length of time for Capital One to get FedEx to stop garnishing Mr. Allen's wages.[10]

F.      Damages.

It is hard to see how Debtors were damaged by the short delay in receiving $37.81. At ten percent interest per year, $37.81 would earn less than 15¢ in two weeks.

### III.    CONCLUSION

Debtors have standing to pursue their stay violation claim with respect to the $37.81 garnished postpetition. They cannot withstand Capital One's summary judgment motion, however, because they could produce no evidence that Capital One was dilatory in releasing the garnishment. By a separate order, the Court will enter a summary judgment in Capital One's favor.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: July 10, 2020
Copies to: Counsel of record

---

[10] Capital One's actions compare very favorably to those of the garnishing creditor in *Scroggin*, which waited twelve weeks to mail the release to the debtor's employer. 364 B.R. at 780. Capital One beat the *Scroggin* creditor by eleven weeks and six days!

-11-
Case 19-01065-t    Doc 58    Filed 07/10/20    Entered 07/10/20 14:42:08    Page 11 of 11